1  W. CHRIS WICKER (State Bar No. 1037)
   MICHAEL W. KEANE (State Bar No. 7398)
2  WOODBURN AND WEDGE
   6100 Neil Road, Suite 500
3  Reno, NV  89511
   Telephone: (775) 688-3000
4  Facsimile: (775) 688-3088
5  wcwicker@woodburnandwedge.com
   mkeane@woodburnandwedge.com
6
7  PHILIP M. SMITH
   PATTON BOGGS
8  1185 Avenue of the Americas
   30th Floor
9  New York, New York 10036
   Telephone:  (646) 557-5145
10 Facsimile:  (646) 557-5101
11 pmsmith@pattonboggs.com

12 Attorneys for Defendants American Oil
   & Gas Inc., Patrick D. O'Brien, Andrew P.
13 Calerich, Jon R. Whitney, Nick DeMare,
   and Scott Hobbs
14

15            UNITED STATES DISTRICT COURT

16               DISTRICT OF NEVADA

17 DAVID SPEIGHT, On Behalf of Himself   )   Case No.
   And All Others Similarly Situated,    )
18                                        )
                                          )
19            Plaintiff,                  )   **NOTICE OF REMOVAL**
                                          )   **(28 U.S.C. §§1441, 1446)**
20    vs.                                 )
                                          )
21 PATRICK D. O'BRIEN, ANDREW P.          )
   CALERICH, JOSEPH B. FEITEN, NICK       )
22 DeMARE, JON R. WHITNEY, C. SCOTT       )
23 HOBBS, AMERICAN OIL & GAS INC.,        )
   HESS CORPORATION, AND HESS             )
24 INVESTMENT CORP.,                      )
                                          )
25            Defendants.                 )
26 _____)

27    TO:    THE UNITED STATES DISTRICT COURT, DISTRICT OF NEVADA:

28    Defendants Patrick D. O'Brien, Andrew P. Calerich, Joseph B. Feiten, Nick DeMare,

-1-

Jon R. Whitney, C. Scott Hobbs, and American Oil and Gas Inc. ("American Oil and Gas") (collectively "Removing Defendants"), by and through their attorneys, Woodburn and Wedge, file this Notice of Removal.

1. Patrick D. O'Brien, Andrew P. Calerich, Joseph B. Feiten, Nick DeMare, Jon R. Whitney, C. Scott Hobbs and American Oil and Gas are defendants in the civil action commenced on August 5, 2010, in the First Judicial District Court of the State of Nevada, entitled <u>David Speight vs. Patrick D. O'Brien, Andrew P. Calerich, Joseph B. Feiten, Nick DeMare, Jon R. Whitney, C. Scott Hobbs, American Oil and Gas Inc., Hess Corporation and Hess Investment Corp.</u>, bearing case no. 10-OC-00340 1B. A true and correct copy of the Summons and the Complaint, which was filed on or about August 5, 2010, are attached hereto as Exhibit A.

2. Pursuant to 28 U.S.C. §§1441, 1446, Removing Defendants remove this action to the United States District Court for the District of Nevada, which is the judicial district in which this action is pending.

### Diversity Jurisdiction.

3. Removal of this action from the Second Judicial District Court of Nevada to this Court is proper under 28 U.S.C. §1441(a) because this Court would have had original jurisdiction of the action on the basis of diversity of citizenship, pursuant to 28 U.S.C. §1332, had the action originally been brought in this Court.

4. There is complete diversity of citizenship between Plaintiff and Defendants in this action because:

    a. It is believed that Plaintiff, David Speight is not a resident of Nevada.

    b. Defendant Patrick D. O'Brien is a resident of the State of Colorado.

    c. Defendant Andrew P. Calerich is a resident of the State of Colorado.

d.    Defendant John R. Whitney is a resident of the State of Colorado.

e.    Defendant Nick DeMare is a Canadian citizen.

f.    Defendant Scott Hobbs is a resident of the State of Colorado.

g.    Joseph B. Feiten is a resident of the State of Colorado.

h.    Hess Corporation is a Delaware corporation and maintains its principal

place of business in the State of New York.

i.    Hess Investment Corp. is a Delaware corporation and maintains its

principal place of business in the State of New York.

j.    American Oil and Gas is a Nevada corporation and maintains its

principal place of business in the State of Colorado.   The only non-diverse, Nevada

resident defendant is American Oil.   Since American Oil has been fraudulently joined,

its presence will not defeat diversity jurisdiction. *See, Ritchey v. Upjohn Drub Co.*, 139

F.3d 1313, 1318 (9th Cir. 1988).

5.    Diversity Jurisdiction is Proper because Defendant American Oil and Gas was

fraudulently joined and therefore removal of this action is also proper under 28 U.S.C. 1441(b)

and 28 U.S.C. 1332(a) , because as specified above, no party properly joined in this action as a

defendant is a citizen of the State of Nevada, the State in whose court the action is currently

pending and because the parties to this action are citizens of different states.

6.    The amount in controversy in this case exceeds $75,000.   In this action, the

Plaintiff exclusively seeks injunctive relief.   When a plaintiff seeks equitable relief, "the

amount in controversy is measured by the value of the object of the litigation." *Hunt v.

Washington State Apple Advertising Comm'n*, 432 U.S. 333, 347 (1977).   Here, the Plaintiff

seeks to halt the merger between American Oil & Gas, Inc. and Hess Corp alleged to be worth

$445 million. (Speight Compl. ¶ 2.)   Thus, the value of the Plaintiff's relief amounts to

-3-

hundreds of millions of dollars, both in value lost to the putative class and in harm done to the Defendants.

Because the Plaintiff seeks an injunction to enforce a collective right of the class—the right of all shareholders to the fiduciary duties of the officers and directors—it is appropriate to consider the value of the injunction from the Defendants' perspective. *In re Ford Motor Co.*, 264 F.3d 952, 959 (9th Cir. 2001); *cf. Eagle v. AT &T Co.*, 769 F.2d 541, 547 (9th Cir. 1985) (holding shareholders' derivative claim to be the exercise of a common, undivided right for the purposes of amount-in-controversy).  The Plaintiff alleges that if the merger is stopped, the Defendants will be subject to a $13.5 million break-up fee (Speight Compl. ¶ 40) and total termination expenses of $15,750,000 (Speight Comp. ¶ 41), thus placing the amount in controversy well-beyond the $75,000 threshold.

The value of the injunctive relief also meets the amount-in-controversy threshold from the Plaintiff's perspective.  The Plaintiff alleges that the merger provides American Oil's stockholders with $445 million in consideration, but that the putative class was entitled to approximately three times that amount.  (Speight Compl. ¶¶ 2, 4.)  The amount-in-controversy threshold is thus satisfied from either the Plaintiff's or the Defendants' viewpoint. *In re Ford Motor Co.*, 264 F.3d at 959.

7.     Defendants, Hess Corporation and Hess Investment Corp. join in the removal of this action to the United States District Court, District of Nevada.

8.     This Notice of Removal is timely under 28 U.S.C. §1441(b), because it is filed within 30 days after the receipt by the Removing Defendants of the Summons Complaint.

9.     A copy of the Notice of Removal of Case to Federal Court filed on August 19, 2010, in the First Judicial District Court of the State of Nevada, in case no. 10-0C00322 1B, is attached hereto as Exhibit B.

10.    All pleadings on file in the state court action at the time of removal are attached hereto as follows:

| Title of Pleading | Filing Date | Exhibit No. |
|---|---|---|
| Summons and Complaint | August 5, 2010 | A |

**WHEREFORE**, Defendants Patrick D. O'Brien, Andrew P. Calerich, Joseph B. Feiten, Nick DeMare, Jon R. Whitney, C. Scott Hobbs and American Oil and Gas respectfully request that this action be removed to the United States District Court, District of Nevada.

DATED this _19_ day of August, 2010.

WOODBURN AND WEDGE

By: _____
        W. Chris Wicker
        Michael W. Keane
Attorneys for Defendants Patrick D. O'Brien, Andrew P. Calerich, Joseph B. Feiten, Nick DeMare, Jon R. Whitney, C. Scott Hobbs and American Oil and Gas

## CERTIFICATE OF MAILING

Pursuant to FRCP 5(b), I certify that I am an employee of Woodburn and Wedge and that on this date I deposited in the United States Mail, with postage prepaid, a true copy of the foregoing document in a sealed envelope addressed to:

Leverty & Associates Law Chtd.
Patrick R. Leverty
832 Willow Street
Reno, NV 89502

Robbins Umeda LLP
Brian J. Robbins
Steven J. Oddo
Rebecca A. Petterson
Ashley R. Palmer
600 B Street, Suite 1900
SanDiego, CA   92101

Abran Vigil
Robert C. Kim
100 North City Parkway, Suite 1750
Las Vegas, NV   89106-4617

DATED this 19th day of August, 2010.

Candace L Mayhew

# EXHIBIT A

# EXHIBIT A

Your name: Patrick R. Leverty, Esq.
Mailing Address: 832 Willow Street
City, State, Zip: Reno, NV 89502
Telephone: 775-322-6636
~~In Proper Person~~

# In The First Judicial District Court of the State of Nevada
## In and for Carson City

| | | |
|---|---|---|
| David Speight | ) | Case No.: 10 OC 00340 1B |
| Plaintiff, | ) | Dept. No. II |
| vs. | ) | Additional |
| American Oil & Gas Inc. | ) | SUMMONS |
| Defendant. | ) | |

**THE STATE OF NEVADA SENDS GREETINGS TO THE ABOVE-NAMED DEFENDANT:**

**NOTICE! YOU HAVE BEEN SUED. THE COURT MAY DECIDE AGAINST YOU WITHOUT YOUR BEING HEARD UNLESS YOU RESPOND WITHIN 20 DAYS. READ THE INFORMATION BELOW.**

TO THE DEFENDANT: A civil Complaint has been filed by the plaintiff against you.

1. If you wish to defend this lawsuit, you must, within 20 days after this Summons is served on you, exclusive of the day of service, file with this Court a written pleading* in response to this Complaint.
2. Unless you respond, your default will be entered upon application of the plaintiff, and this Court may enter a judgment against you for the relief demanded in the Complaint**, which could result in the taking of money or property or the relief requested in the Complaint.
3. If you wish to seek the advice of an attorney in this matter, you should do so promptly so that your response may be filed on time.
4. You are required to serve your response upon plaintiff's attorney, whose address is

ALAN GLOVER, Clerk of the Court

By: _____ J. HARKLEROAD, Deputy Clerk

Date: _____ 8 11 , 20 10 .

*There is a fee associated with filing a responsive pleading. Please refer to fee schedule.
**Note – When service by publication, insert a brief statement of the object of the action. See Rule 4.

**RETURN OF SERVICE ON REVERSE SIDE**

Page 1 of 2

Summons/W/08-12-09

**AFFIDAVIT OF SERVICE (For General Use)**

STATE OF _____ )
                           ) ss.
COUNTY OF _____ )

_____, declares under penalty of perjury:
That affiant is, and was on the day when (s)he served the within Summons, over 18 years of age, and not a party to,
nor interested in, the within action; that the affiant received the Summons on the _____ day of
_____, 20_____, and personally served the same upon _____
the within named defendant, on the _____ day of _____, 20_____, by delivering to the said defendant,
personally, in _____, County of _____, State of _____, a
copy of the Summons attached to a copy of the Complaint.
I declare under penalty of perjury under the law of the state of Nevada that the foregoing is true and correct.
Executed this _____ day of _____, 20___. _____
                                                       Signature of person making service

**NEVADA SHERIFF'S RETURN**
**(for use of Sheriff of Carson City)**

STATE OF NEVADA           )
                            ) ss.
CARSON CITY              )

I hereby certify and return that I received the within Summons on the _____ day of _____,
20_____, and personally served the same upon _____,
the within named defendant, on the _____ day of _____, 20_____, by delivering to the said
defendant, personally, in Carson City, State of Nevada, a copy of the Summons attached to a copy of the Complaint.
                                KENNY FURLONG, Sheriff of Carson City, Nevada
Date: _____, 20____.      By:_____, Deputy

**AFFIDAVIT OF MAILING**
**(For use when service is by publication and mailing)**

STATE OF _____ )
                           ) ss.
COUNTY OF _____ )

_____, declares under penalty of perjury:
That affiant is, and was when the herein described mailing took place, over 18 years of age, and not a party to, nor
interested in, the within action; that on the _____ day of _____, 20_____, affiant deposited in the
Post Office at _____, Nevada, a copy of the within Summons attached to a copy of the
Complaint, enclosed in a sealed envelope upon which first class postage was fully prepaid, addressed to
_____ the within named defendant, at _____
_____; that there is a regular communication by mail
between the place of mailing and the place so addressed.
I declare under penalty of perjury under the law of the state of Nevada that the foregoing is true and correct.
Executed this _____ day of _____, 20___. _____

**NOTE -**      If service is made in any manner permitted by Rule 4 other than personally upon the defendant, or
is made outside the United States, a special affidavit or return must be made.

Summons/W/08-12-09

1   LEVERTY & ASSOCIATES LAW CHTD.
    PATRICK R. LEVERTY
2   832 Willow St.
    Reno, Nevada 89502
3   Telephone: (775) 322-6636
    Facsimile: (775) 322-3953
4
    ROBBINS UMEDA LLP
5   BRIAN J. ROBBINS - pro hac vice pending
    STEVEN J. ODDO - pro hac vice pending
6   REBECCA A. PETERSON - pro hac vice pending
    ASHLEY R. PALMER - pro hac vice pending
7   600 B Street, Suite 1900
    San Diego, CA 92101
8   Telephone: (619) 525-3990
    Facsimile: (619) 525-3991
9
    Attorneys for Plaintiff
10

REC'D & FILED
2010 AUG -5  PM 4: 59
ALAN GLOVER
BY ___ C. COOPER

DISTRICT COURT

CARSON CITY COUNTY, NEVADA

| | |
|---|---|
| DAVID SPEIGHT, On Behalf of Himself and All Others Similarly Situated, <br><br>         Plaintiff, <br><br>     vs. <br><br> PATRICK D. O'BRIEN, ANDREW P. CALERICH, JOSEPH B. FEITEN, NICK DEMARE, JON R. WHITNEY, C. SCOTT HOBBS, AMERICAN OIL & GAS INC., HESS CORPORATION, and HESS INVESTMENT CORP., <br><br>         Defendants. | Case No. 10 OC 00310 1B <br><br> CLASS ACTION Dept. 7 <br><br> SHAREHOLDER COMPLAINT BASED UPON SELF-DEALING AND BREACH OF FIDUCIARY DUTY |

1   Plaintiff alleges upon knowledge as to his own acts and upon information and belief as to

2   all other matters, as follows:

3   **SUMMARY OF THE ACTION**

4   1.      Plaintiff brings this shareholder class action both for himself and on behalf of all

5   similarly situated holders of common stock of American Oil & Gas Inc. ("American Oil" or the

6   "Company") against American Oil, the directors and certain officers of American Oil, Hess

7   Corporation ("Hess"), and Hess Investment Corp ("HIC"). This matter arises out of defendants'

8   agreement to sell American Oil to Hess via an unfair process for unfair consideration (the

9   "Proposed Acquisition"). In pursuing the Proposed Acquisition, each of the defendants has

10  violated applicable law by directly breaching and/or aiding breaches of fiduciary duties of

11  loyalty and due care owed to plaintiff and the proposed class (as defined below).

12  2.      Under the terms of the Proposed Acquisition, each American Oil shareholder is to

13  receive 0.1373 Hess share for each American Oil share they own, for an implied value of only

14  $7.32 per American Oil share (the "Proposed Consideration"). The Proposed Consideration has

15  a total value of approximately $445 million, representing a ***premium of just 9.4%*** to the trading

16  price of American Oil stock prior to the announcement of the Proposed Acquisition. American

17  Oil shareholders will control a mere 2.6% of the post-Proposed Acquisition company.

18  3.      Over the last year, comparable premiums for oil and gas transactions have

19  garnered an average of 27.34%, with some transactions' premiums reaching above 50%. The

20  defendants obtained a meager premium of 9.4%, approximately a third of the average premium

21  for oil and gas companies over the last year.

22  4.      Hess is moving to acquire American Oil now before the Company can unlock the

23  potential in its vast oil reserves. In particular, American Oil has 85,000 net acres of oil and

24  natural gas assets from the Company's Goliath Project in the Bakken and Three Forks area of

25  South Dakota. The Bakken region, which stretches from Canada into Montana and North

26  Dakota, is thought to hold up to 3.65 billion barrels in oil reserves. Recent advancements in

27  drilling, completion, and stimulation technologies have resulted in commercially successful

28  Bakken and Three Forks wells. Now, before the shareholders can experience the value of the

- 1 -

1  Company's Bakken wells, the defendants are attempting to sell the Company for inadequate
2  consideration.    Moreover, the Proposed Acquisition undervalues the acreage price of the
3  Company's Bakken assets.

4       5.     In conjunction with agreeing to a deal that shortchanges the Company's common
5  shareholders in favor of the interests of defendants, the Individual Defendants also secured
6  personal financial benefits for themselves.    Specifically, under the Agreement and Plan of
7  Merger dated July 27, 2010 ("Merger Agreement"), all outstanding American Oil stock options
8  and restricted shares held by the Individual Defendants will vest and become immediately
9  exercisable, conferring upon the Individual Defendants benefits they would not have otherwise
10 obtained has they not agreed to the flawed Proposed Acquisition.

11      6.     In order to ensure that the Proposed Acquisition is completed, the Individual
12 Defendants agreed to a number of preclusive deal protection devices.    In particular, the
13 Individual Defendants agreed to: (i) a non-mutual termination fee of $13.5 million payable to
14 Hess if the Company or Hess terminates the Merger Agreement, plus reimbursement of up to
15 $2.25 million of Hess's expenses if the Merger Agreement is terminated under specified
16 circumstances; (ii) voting agreements which lock up approximately 20.5% of the Company's
17 voting stock in favor of the Proposed Acquisition; and (iii) a no-solicitation clause that prohibits
18 the Company from seeking a superior offer for its shareholders.

19      7.     Further, the Individual Defendants failed to obtain a collar to combat fluctuations
20 in the stock price of Hess that could adversely affect the value of the Proposed Acquisition to
21 American Oil's shareholders.    The Individual Defendants' failure to obtain a collar to combat the
22 inherent risk in a stock transaction like the Proposed Acquisition must be remedied.    A collar is
23 imperative in this situation as Hess's stock had dropped over 15% in 2010 up to the date the
24 Proposed Acquisition was announced.

25      8.     Thus, the Proposed Acquisition is the product of a flawed process that is designed
26 to ensure the sale of American Oil to Hess on terms preferential to certain American Oil
27 directors, officers, and Hess but detrimental to plaintiff and the other public stockholders of
28 American Oil.    Plaintiff seeks to enjoin the Proposed Acquisition, or alternatively, in the event

- 2 -

1  the Proposed Acquisition is consummated, plaintiff seeks to recover damages caused by the

2  breaches of fiduciary duties owed to the Company's shareholders.

3                              **JURISDICTION AND VENUE**

4        9.      This Court has jurisdiction over each defendant named herein.  American Oil is a

5  Nevada corporation.  The individual defendants have sufficient minimum contacts with Nevada

6  so as to render the exercise of jurisdiction by this Court permissible under traditional notions of

7  fair play and substantial justice.

8        10.     Venue is proper in this Court because the conduct at issue had an effect in this

9  State.

10                                    **PARTIES**

11       11.     Plaintiff David Speight is, and has been at all times relevant hereto, an American

12 Oil shareholder.

13       12.     Defendant Patrick D. O'Brien ("O'Brien") is American Oil's Chief Executive

14 Officer and Chairman of the Board and has been since February 2003.  O'Brien was also

15 American Oil's President from February 2003 to July 2003.

16       13.     Defendant Andrew P. Calerich ("Calerich") is American Oil's President and has

17 been since July 2003 and a director and has been since October 2003.  Calerich was also

18 American Oil's Chief Financial Officer from July 2003 to June 2006.

19       14.     Defendant Joseph B. Feiten ("Feiten") is American Oil's Chief Financial Officer

20 and has been since June 2006.

21       15.     Defendant Nick DeMare is an American Oil director and has been since October

22 2003.

23       16.     Defendant Jon R. Whitney is an American Oil director and has been since

24 February 2005.

25       17.     Defendant C. Scott Hobbs is an American Oil director and has been since July

26 2008.

27

28

SHAREHOLDER COMPLAINT BASED UPON SELF-DEALING AND BREACH OF FIDUCIARY DUTY

18.     Defendant American Oil is a Nevada corporation that operates in the U.S. Rocky Mountain region as an oil and gas exploration and production company. The Company is engaged in acquiring oil and gas mineral leases and the exploration, development, and production of hydrocarbon reserves. American Oil's principal executive offices are at 1050 17th Street, Suite 2400 Denver, CO.

19.     Defendant Hess is a Delaware corporation that operates globally in two segments: (i) Exploration and Production; and (ii) Marketing and Refining. Through these segments, Hess is engaged in the exploration, production, purchase, transportation, and sale of crude oil and natural gas, as well as the production and sale of refined petroleum products. Hess's principal executive offices are at 1185 Avenue of the Americas, New York, NY.

20.     Defendant HIC is a Nevada corporation and a direct wholly-owned subsidiary of Hess. Upon completion of the Proposed Acquisition, HIC will merge with and into American Oil and will cease its separate corporate existence.

21.     The defendants identified in ¶¶12-17 are at times collectively referred to as the "Individual Defendants."

22.     The Individual Defendants, as officers and directors of the Company, owe fiduciary duties to the public shareholders. As alleged herein, they have breached their fiduciary duties by failing to maximize shareholder value in a proposed sale of the Company.

## CLASS ACTION ALLEGATIONS

23.     Plaintiff brings this action individually and as a class action on behalf of all holders of American Oil stock who are being and will be harmed by defendants' actions described herein (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendants.

24.     This action is properly maintainable as a class action.

25.     The Class is so numerous that joinder of all members is impracticable. American Oil has outstanding approximately 60.6 million shares owned by thousands of shareholders.

26.     There are questions of law and fact which are common to the Class, including, inter alia, the following:

1           (a)     whether the Individual Defendants have breached their fiduciary duties of

2 undivided loyalty and due care with respect to plaintiff and the other members of the Class in

3 connection with the Proposed Acquisition;

4           (b)     whether the Individual Defendants have erected barriers designed to deter

5 interested bidders, other than Hess;

6           (c)     whether the Individual Defendants have disclosed to the Company's public

7 shareholders all material information necessary for said shareholders to make a decision as to

8 whether to vote their shares in support of the Proposed Acquisition;

9           (d)     whether American Oil, Hess, and HIC have aided and abetted the

10 Individual Defendants in breaching their duties; and

11           (e)     whether plaintiff and the other members of the Class will be irreparably

12 harmed if the transactions complained of herein are consummated.

13     27.     Plaintiff's claims are typical of the claims of the other members of the Class and

14 plaintiff does not have any interests adverse to the Class.

15     28.     Plaintiff is an adequate representative of the Class, has retained competent

16 counsel experienced in litigation of this nature, and will fairly and adequately protect the

17 interests of the Class.

18     29.     The prosecution of separate actions by individual members of the Class would

19 create a risk of inconsistent or varying adjudications which would establish incompatible

20 standards of conduct for the party opposing the Class.

21     30.     Defendants have acted on grounds generally applicable to the Class with respect

22 to the matters complained of herein, thereby making appropriate the relief sought herein with

23 respect to the Class as a whole.

24                             **FACTUAL ALLEGATIONS**

25     31.     Despite recent difficulties caused by the global recession, the short-term and long-

26 term prospects for American Oil's services and finances are favorable.

27     32.     On May 18, 2010, American Oil issued a press release reporting the Company's

28 financial results for its first quarter 2010. In the press release, the Company reported net income

SHAREHOLDER COMPLAINT BASED UPON SELF-DEALING AND BREACH OF FIDUCIARY DUTY

1   of $28 million, and earnings per share of $0.49. The positive financial results of the Company,

2   as reported by American Oil in recent press releases and SEC filings, make the decision to sell

3   the Company to Hess for the Proposed Consideration all the more shocking.

4       33.     On July 27, 2010, the Company announced the Proposed Acquisition in a press

5   release. The press release stated in pertinent part:

6           NEW YORK and DENVER, July 27, 2010 – Hess Corporation and
        American Oil & Gas Inc. jointly announced today that Hess has agreed to acquire
7       American Oil & Gas pursuant to a merger agreement approved by the Boards of
        Directors of both companies in an all-stock transaction. The acquisition will
8       increase Hess' strategic acreage position in the Bakken oil play in North Dakota
        by approximately 85,000 net acres.
9

10          Under terms of the agreement, Hess has agreed to issue 0.1373 shares of
        its common stock in exchange for each outstanding share of American Oil & Gas'
11      common stock. This represents a 9.4 percent premium to American Oil & Gas
        stockholders based on the closing stock prices of Hess' and American Oil & Gas'
12      shares on July 27, 2010. It is expected that Hess would issue approximately 8.6
        million shares for all outstanding American Oil & Gas shares and options on a net
13      settlement basis. The merger agreement provides for a possible cash dividend to
        American Oil & Gas' stockholders to the extent of American Oil & Gas' positive
14      working capital as of the closing date (subject to certain adjustments that are
        described in the merger agreement) and subject to available cash. Hess has
15      committed (subject to the terms and conditions of a customary commitment letter)
        to provide American Oil & Gas with a $30 million working capital credit facility
16      to help finance American Oil & Gas' planned exploration and production
        activities and other working capital needs prior to the closing of the transaction.
17

18          "This acquisition builds upon our strong land position in the Bakken,
        leverages our nearby infrastructure and offers operational synergies," said Greg
19      Hill, President of Worldwide Exploration and Production at Hess.

20          "We believe this transaction captures the value that we have been able to
21      create since our initial entry in the North Dakota Bakken play four years ago,"
        said Pat O'Brien, CEO of American Oil & Gas. "We are excited about the
22      leverage our stockholders will gain not only to Hess' compelling Bakken position
        and developmental activities, but also to Hess' large and diverse global project
23      portfolio."

24          The transaction is subject to customary closing conditions, including
25      approval of American Oil & Gas' shareholders. Holders of approximately 20.5
        percent of American Oil & Gas common stock have agreed to vote their shares in
26      favor of the merger. Completion of the transaction is expected in the fourth
        quarter of 2010. In connection with the transaction, Goldman, Sachs & Co. is
27      acting as financial advisor to Hess and Tudor, Pickering, Holt & Co. Securities

28

SHAREHOLDER COMPLAINT BASED UPON SELF-DEALING AND BREACH OF FIDUCIARY DUTY

1   Inc. is acting as financial advisor and provided a Fairness Opinion to American
2   Oil & Gas. Legal counsel is being provided by White & Case LLP for Hess and
    Patton Boggs LLP for American Oil & Gas.

3       34.    The Proposed Acquisition undervalues American Oil's immediate and longterm

4   prospects as an oil and natural gas producer. Joel Musante ("Musante"), an analyst with C.K.

5   Cooper & Company believes American Oil has tremendous upside as a stand alone company

6   because of its Bakken region assets. Musante stated that "[s]ome investors may be disappointed

7   by the acquisition with Hess because the transaction will reduce shareholder's leverage to the

8   Bakken/3F play." Musante targeted American Oil's target price at $8, approximately 10% more

9   than the Proposed Consideration. And Wunderlich Securities targeted the Company's stock

10  value at $10.00, approximately 20% more than the Proposed Consideration.

11      35.    Furthermore, American Oil stock traded above the implied value of the Proposed

12  Acquisition as recently as May 2010. On May 3, 2010, for example, American Oil stock traded

13  as high as $7.74 per share, or approximately 5.7% *above* the Proposed Consideration.

14      36.    Over the past year at least fourteen transactions have occurred involving oil and

15  gas companies with an average premium of 27.34%, well above the 9% being offered the

16  shareholders in the Proposed Acquisition.   Similarly, over the last five years forty-seven

17  transactions have resulted in an average premium of 27.26%. The premium does not reflect the

18  Proposed Acquisition's inadequate valuation of the Company's Bakken site. On July 28, 2010,

19  Jim Byrne, an analyst with BMO Capital Markets stated that "we believe the $5,300/acre is

20  justified and *much lower* than the valuation implied in the market today by other Bakken

21  players." The Individual Defendants have failed to maximize shareholder value by not receiving

22  the extensive value the Company's Bakken site offers to shareholders and any potential acquirer.

23      37.    On July 29, 2010, the Company filed a Form 8-K with the SEC, wherein it

24  disclosed the Merger Agreement.   The announcement and filing reveal that the Proposed

25  Acquisition is the product of a flawed sale process and, unless the Proposed Consideration is

26  increased, would be consummated at an unfair value.

27

28

38.     Under Section 6.5 of the Merger Agreement, American Oil is subject to a no-solicitation clause that prohibits the Company from seeking a superior offer for its shareholders. Section 6.5(a) restricts American Oil's ability to:

> (i) solicit, initiate or take any action to facilitate or encourage, whether publicly or otherwise, the submission of any inquiries, proposals or offers or any other efforts or attempts that constitute, or may reasonably be expected to lead to, any Alternative Transaction (an "Acquisition Proposal"), (ii) enter into or participate in any discussions or negotiations, furnish any information relating to the Company or any of its Subsidiaries or afford access to the business, properties, assets, books or records of the Company or any of its Subsidiaries, or otherwise cooperate in any way with, or assist or participate in connection with any Acquisition Proposal, (iii) make a Change in Company Recommendation or (iv) enter into any agreement, agreement in principle, letter of intent, term sheet or other similar instrument relating to an Alternative Transaction or enter into any agreement or agreement in principle (other than an Acceptable Confidentiality Agreement as permitted by this Section 6.5) requiring the Company to abandon, terminate or fail to consummate the transactions contemplated hereby or breach its obligations hereunder or propose or agree to do any of the foregoing.

39.     It is highly unlikely that a competing bidder for the Company will emerge.  Given the restrictive nature of the Merger Agreement, any bid would have to be made based on due diligence conducted with only publicly available information, since a competing bidder can not gain access to confidential Company material prior to making a competing bid.  And even if such a bidder should emerge, the playing field would still not be level.  If the Company were to receive an acquisition proposal that was superior to the Proposed Acquisition, Hess would have the right to match the bid within three days, in which case the Company would be required still to proceed with Hess as the buyer.  Further tipping the scale towards Hess, the Company must also provide Hess with any and all documents and information it provides to a competing bidder. Specifically, under Section 6.5(c) of the Merger Agreement:

> Notwithstanding anything in this Agreement to the contrary, if prior to the attainment of the Required Company Vote (and in no event after the attainment of the Required Company Vote), the Board of Directors receives a Superior Proposal without breaching its obligations under this Section 6.5 and the Board of Directors reasonably determines in good faith after consultation with its outside counsel that the failure to take such action would constitute a breach of its fiduciary duties under Applicable Law, the Board of Directors may (i) effect a Change in Company Recommendation and/or (ii) terminate this Agreement pursuant to Section 8.1(i) to enter into a definitive agreement with respect to such

- 8 -

Superior Proposal; provided, that the Board of Directors may not effect a Change in Company Recommendation or terminate this Agreement pursuant to Section 8.1(i) unless (A) it gives Parent three (3) Business Days' prior written notice (the "Notice Period") of its intention to do so (unless at the time such notice is otherwise required to be given there are less than three (3) Business Days prior to the Company Stockholders Meeting, in which case the Company shall provide as much notice as is reasonably practicable) attaching the most current version of all relevant proposed transaction agreements and other material documents (and a description of all material terms and conditions thereof (including the identity of the Person making such Superior Proposal), (B) during the Notice Period, the Company, if requested by Parent, shall have engaged in good faith negotiations to amend this Agreement (including by making its officers and its financial and legal advisors reasonably available to negotiate in good faith) so that such Alternative Transaction ceases to constitute a Superior Proposal and (C) Parent does not make, within three (3) Business Days of its receipt of such written notification, an offer that the Board of Directors determines in good faith, after consultation with its financial and legal advisors, is at least as favorable to the stockholders as such Superior Proposal. In the event of any material revisions to the applicable Superior Proposal, the Company shall be required to deliver a new written notice to Parent and to comply with the requirements of this Section 6.5(c) with respect to such new written notice (to the extent so required).

40. Furthermore, American Oil is subject to another lock up provision in Section 8.3 of the Merger Agreement. Section 8.3 states that American Oil is subject to a non-mutual termination fee of $13.5 million payable to Hess if the Company or Hess terminates the Merger Agreement, plus reimbursement of up to $2.25 million of Hess's expenses if the Merger Agreement is terminated under certain conditions. As an example, under Section 8.3(a) of the Merger Agreement:

If this Agreement is terminated pursuant to Section 8.1(i), then the Company shall pay to Parent, concurrently with and as a condition to such termination, by wire transfer of immediately available funds to an account designated in writing by Parent, (i) a fee in the amount of $13,500,000 (the "Termination Fee"), (ii) all of Parent's out-of-pocket fees and expenses (including legal fees and expenses) actually incurred by Parent and its affiliates on or prior to the termination of this Agreement in connection with the transactions contemplated by this Agreement, which shall not exceed $2,250,000 (the "Expense Reimbursement") and (iii) all principal, all accrued interest thereon and any other amounts owing under any Interim Facility (the "Facility Repayment").

41. The termination fee and the expense reimbursement amount in total to $15,750,000, or over 3.5% of the total value of the Proposed Acquisition. Such an excessive fee will only serve to dissuade potential suitors from coming forward with competing bids. The

- 9 -

1   termination fee effectively adds $0.25 per American Oil share to the price tag of any competing

2   bid.

3       42.   The Individual Defendants have also attempted to lock up the Proposed

4   Acquisition via voting agreements with certain Company shareholders.  In an effort to sway the

5   shareholder vote in favor of the Proposed Acquisition and ward off any competing bids, the

6   Individual Defendants have secured agreements that require approximately 20.5% of the

7   Company's outstanding voting shares to vote in favor of the Proposed Acquisition.  These

8   agreements are detailed further in the Company's Form 8-K filed with the SEC on July 29, 2010:

9       In connection with the Merger, certain officers, directors and 5%
10   beneficial owners who own an aggregate of approximately 20.5% of the
     Company's common stock entered into voting agreements dated as of July 27,
11   2010 (the "Voting Agreement").  Each Voting Agreement provides that each
     holder will vote his shares in favor of the approval and adoption of the Merger
12   Agreement and will not sell or transfer his shares.  Each Voting Agreement
     terminates at the Closing of the Merger or if the Merger Agreement is terminated
13   in accordance with its terms.

14       43.   While the preclusive deal protection provisions described above will prevent

15   adequate bids from being made for the Company and will instead subject Company shareholders

16   to the wholly inadequate Proposed Acquisition, defendant Hess is making out much better.

17   Indeed, commenting on the Proposed Acquisition during Hess's July 28, 2010 earnings

18   conference call, Hess's Chairman and CEO, John Hess, touted the substantial benefits of the

19   Proposed Acquisition to Hess:

20       Yesterday we announced the acquisition of American Oil & Gas, Inc., for 8.6
21   million shares of Hess common stock.  This transaction will add approximately
     85,000 net acres in the Williston basin in North Dakota, build upon Hess' strong
22   land position, leverage our infrastructure and enhance our growth profile in the
     Bakken oil play.  The transaction is expected to close in the fourth quarter.
23

24       44.   In exchange for agreeing to the flawed Proposed Acquisition, which is a boon to

25   Hess and grossly inadequate to American Oil's shareholders, the Individual Defendants have

26   secured valuable provisions for themselves.  Most notably, all Company stock options and

27   restricted shares will vest and become exercisable immediately prior to the consummation of the

28

- 10 -

Proposed Acquisition. The Form 8-K filed by the Company on July 29, 2010 provides additional details:

> At the effective time of the Merger (the "Closing"), each share of Company common stock will be converted into the right to receive 0.1373 shares of Hess common stock. Hess will not assume any stock options of the Company. Unvested stock options will become fully exercisable immediately prior to the Closing, and holders of such options may exercise their options or receive Hess shares as provided in the Agreement. In addition, each share of Company restricted stock will become fully vested prior to the Closing and will have the same rights as each share of common stock not subject to any restrictions.

45.   The preceding provision is financially significant to the Individual Defendants. Many of the restricted shares held by the Individual Defendants are not slated to vest until 2014. In fact, the dollar value of the restricted shares owned by each defendant whose vesting will accelerate in connection with the Proposed Acquisition greatly outweighs the total annual compensation paid to each of the Individual Defendants.

46.   Unless enjoined by this Court, the defendants will continue to breach and/or aid the breaches of fiduciary duties owed to plaintiff and the Class, and may consummate the Proposed Acquisition which will deprive Class members of their fair share of American Oil's valuable assets and businesses, to the irreparable harm of the Class.

47.   Plaintiff and the other members of the Class have no adequate remedy at law.

## FIRST CAUSE OF ACTION

### Claim for Breach of Fiduciary Duties Against the Individual Defendants

48.   Plaintiff incorporates by reference and realleges each and every allegation contained above as though fully set forth herein.

49.   The Individual Defendants have violated the fiduciary duties of care, loyalty, good faith, and independence owed to the public shareholders of American Oil and have acted to put their personal interests ahead of the interests of American Oil's shareholders.

50.   By the acts, transactions, and courses of conduct alleged herein, defendants, individually and acting as a part of a common plan, are attempting to unfairly deprive plaintiff and other members of the Class of the true value inherent in and arising from American Oil.

SHAREHOLDER COMPLAINT BASED UPON SELF-DEALING AND BREACH OF FIDUCIARY DUTY

51. The Individual Defendants have violated their fiduciary duties by entering American Oil into the Proposed Acquisition without regard to the effect of the Proposed Acquisition on American Oil's shareholders.

52. As demonstrated by the allegations above, the Individual Defendants failed to exercise the care required, and breached their duties of loyalty, good faith, and independence owed to the shareholders of American Oil because, among other reasons:

(a) they failed to take steps to maximize the value of American Oil to its public shareholders;

(b) they failed to properly value American Oil and its various assets and operations; and

(c) they ignored or did not protect against the numerous conflicts of interest resulting from the Individual Defendants own interrelationships or connection with the Proposed Acquisition.

53. Because the Individual Defendants dominate and control the business and corporate affairs of American Oil, have access to private corporate information concerning American Oil's assets, business and future prospects, there exists an imbalance and disparity of knowledge and economic power between them and the public shareholders of American Oil which makes it inherently unfair for them to pursue and recommend any Proposed Acquisition wherein they will reap disproportionate benefits to the exclusion of maximizing shareholder value.

54. By reason of the foregoing acts, practices, and course of conduct, the Individual Defendants have failed to exercise ordinary care and diligence in the exercise of their fiduciary obligations toward plaintiff and the other members of the Class.

55. The Individual Defendants are engaging in self-dealing, are not acting in good faith toward plaintiff and the other members of the Class, and have breached and are breaching their fiduciary duties to the members of the Class.

56. As a result of the Individual Defendants' unlawful actions, plaintiff and the other members of the Class will be irreparably harmed in that they will not receive their fair portion of

- 12 -

1  the value of American Oil's assets and operations.  Unless the Proposed Acquisition is enjoined

2  by the Court, the Individual Defendants will continue to breach their fiduciary duties owed to

3  plaintiff and the members of the Class, will not engage in arm's-length negotiations on the

4  Proposed Acquisition terms, and may consummate the Proposed Acquisition, all to the

5  irreparable harm of the members of the Class.

6  57.    Plaintiff and the members of the Class have no adequate remedy at law.  Only

7  through the exercise of this Court's equitable powers can plaintiff and the Class be fully

8  protected from the immediate and irreparable injury which defendants' actions threaten to inflict.

9  ## SECOND CAUSE OF ACTION

10  **Claim for Aiding and Abetting Breaches of Fiduciary Duty Against American Oil**

11  58.    Plaintiff incorporates by reference and realleges each and every allegation

12  contained above as though fully set forth herein.

13  59.    The Individual Defendants owed to plaintiff and the members of the Class certain

14  fiduciary duties as fully set out herein.

15  60.    By committing the acts alleged herein, the Individual Defendants breached their

16  fiduciary duties owed to plaintiff and the members of the Class.

17  61.    American Oil colluded in or aided and abetted the Individual Defendants'

18  breaches of fiduciary duties, and was an active and knowing participant in the Individual

19  Defendants' breaches of fiduciary duties owed to plaintiff and the members of the Class.

20  62.    Plaintiff and the members of the Class shall be irreparably injured as a direct and

21  proximate result of the aforementioned acts.

22  ## THIRD CAUSE OF ACTION

23  **Claim for Aiding and Abetting Breaches of Fiduciary Duty Against Hess and HIC**

24  63.    Plaintiff incorporates by reference and realleges each and every allegation

25  contained above as though fully set forth herein.

26  64.    The Individual Defendants owed to plaintiff and the members of the Class certain

27  fiduciary duties as fully set out herein.

28

SHAREHOLDER COMPLAINT BASED UPON SELF-DEALING AND BREACH OF FIDUCIARY DUTY

1    65.    By committing the acts alleged herein, the Individual Defendants breached their
2  fiduciary duties owed to plaintiff and the members of the Class.

3    66.    Hess and HIC colluded in or aided and abetted the Individual Defendants'
4  breaches of fiduciary duties, and were active and knowing participants in the Individual
5  Defendants' breaches of fiduciary duties owed to plaintiff and the members of the Class.

6    67.    Hess and HIC participated in the breach of the fiduciary duties by the Individual
7  Defendants for the purpose of advancing their own interests. Hess and HIC obtained and will
8  obtain both direct and indirect benefits from colluding in or aiding and abetting the Individual
9  Defendants' breaches. Hess and HIC will benefit, *inter alia*, from the acquisition of the
10  Company at an inadequate and unfair consideration if the Proposed Acquisition is consummated.

11    68.    Plaintiff and the members of the Class shall be irreparably injured as a direct and
12  proximate result of the aforementioned acts.

13                                **PRAYER FOR RELIEF**

14      WHEREFORE, plaintiff demands injunctive relief, in his favor and in favor of the Class
15  and against defendants as follows:

16      A.    Declaring that this action is properly maintainable as a class action;

17      B.    Declaring and decreeing that the Board's actions are a breach of the fiduciary
18  duties of the Individual Defendants and are therefore unlawful and unenforceable;

19      C.    Rescinding, to the extent already implemented, any agreement and plan of
20  merger;

21      D.    Enjoining defendants, their agents, counsel, employees, and all persons acting in
22  concert with them from consummating the Proposed Acquisition, unless and until the Company
23  adopts and implements a procedure or process reasonably designed to enter into a merger
24  agreement providing the best possible value for shareholders;

25      E.    Directing the Individual Defendants to exercise their fiduciary duties to
26  commence a sale process that is reasonably designed to secure the best possible consideration for
27  American Oil's shareholders;

28

1    F.    Imposition of a constructive trust, in favor of plaintiff and members of the Class,

2    upon any benefits improperly received by defendants as a result of their wrongful conduct;

3    G.    Awarding plaintiff the costs and disbursements of this action, including

4    reasonable attorneys' and experts' fees; and

5    H.    Granting such other and further equitable relief as this Court may deem just and

6    proper.

7    Dated: August 5, 2010

LEVERTY & ASSOCIATES LAW CHTD
PATRICK R. LEVERTY

_____
PATRICK R. LEVERTY

832 Willow St.
Reno, Nevada 89502
Telephone: (775) 322-6636
Facsimile: (775) 322-3953

ROBBINS UMEDA LLP
BRIAN J. ROBBINS
STEVEN J. ODDO
REBECCA A. PETERSON
ASHLEY R. PALMER
600 B Street, Suite 1900
San Diego, CA 92101
Telephone: (619) 525-3990
Facsimile: (619) 525-3991

Attorneys for Plaintiff

514760_

- 15 -

SHAREHOLDER COMPLAINT BASED UPON SELF-DEALING AND BREACH OF FIDUCIARY DUTY